UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DALE W., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 2:17-cv-00213-JDL |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Performing the Duties and Functions not | ) |
| Reserved to the Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that (i) the ALJ failed to consider evidence admitted at the administrative hearing, (ii) the ALJ erred in his assessment of the plaintiff's subjective complaints, (iii) the ALJ's residual functional capacity ("RFC") formulation is unsupported by substantial evidence, and (iv) the Appeals Council erred in its rejection of the plaintiff's request for a review of the ALJ's decision. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 8-15. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015, Finding 1, Record at 14; that he had the severe impairments of residuals of traumatic cervical spine and closed head injury status-post multilevel fusion, bilateral lower extremity osteoarthritis, right upper extremity traumatic injury residuals status-post internal fixation hardware, adjustment reaction with depressed mood, and an antisocial personality disorder, Finding 3, *id*.; that he had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) except that he was limited to no more than occasional postural adaptations (*i.e.*, stooping, kneeling, crouching, crawling, balancing, or climbing ramps or stairs), was precluded from all exposure to hazards such as unprotected heights, dangerous machinery, or climbing ladders, ropes, or scaffolds, and was relegated to simple, routine, repetitive tasks entailing no more than occasional exercise of independent judgment or discretion and no more than occasional changes in work processes, Finding 5, *id*. at 16; that, considering his age (53 years old, defined as an individual closely approaching advanced age, on his date last insured, December 31, 2015),[2] education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 21; and that he, therefore, had not been disabled from August 1, 2011, his alleged onset date of disability, through December 31, 2015, his date last insured, Finding 11, *id*. at 22. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the

---

[2] The ALJ mistakenly categorized the plaintiff as a younger individual as of his date last insured, stating that he "subsequently changed age category to closely approaching advanced age." Finding 7, Record at 21 (citation omitted). Nothing turns on the error, which I have corrected.

final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. The ALJ's Failure To Consider Evidence Admitted at the Hearing

The plaintiff first argues that the ALJ erred in failing to consider evidence that was admitted at his June 16, 2016, hearing and made part of the record. *See* Statement of Errors at 8-9. At the outset of the hearing, the plaintiff's counsel requested that the ALJ admit a report of a consultative examination performed two days earlier, on June 14, 2016, by Douglas H. Buxton, M.D., of Maine Medical Partners Neurosurgery & Spine. *See* Record at 361, 824-29. The ALJ granted that request, stating that he had "determined that there is good cause and we will make that part of the record." *Id.* at 362. The Buxton report was indeed made part of the record, *see id*. at 824-29;

3

however, in his decision, the ALJ stated that he had not found good cause to enter that evidence into the record and made no further mention of it, *see id*. at 12-21.

As the commissioner concedes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 16) at 2, this was error. However, the parties disagree about whether the error was harmless. *Compare id*. at 2-4 *with* Statement of Errors at 9. For the reasons that follow, I am persuaded that it was.

The plaintiff contends that the error was reversible because, in deeming his testimony regarding the severity and functional effects of his symptoms, including pain, "not entirely consistent with the medical evidence and other evidence in the record[,]" the ALJ erroneously stated that "there [we]re no medical records from 2015 or 2016, suggesting that the [plaintiff]'s condition [wa]s stable and improved." Statement of Errors at 9; Record at 19-20. He asserts that, to the contrary, as evidenced by the 2016 Buxton record, his cervical spine condition continued to deteriorate, and he continued to suffer pain and functional limitations of sufficient severity that he eventually required further surgery. *See* Statement of Errors at 9.

However, as the commissioner observes, *see* Opposition at 2-3, the Buxton report postdates the plaintiff's date last insured, December 31, 2015, by nearly six months, and nothing therein makes clear that the plaintiff's cervical spine condition had deteriorated as of December 31, 2015. Indeed, Dr. Buxton stated, "Unfortunately, it sounds as though [the plaintiff] has begun to develop a right C8 radicular pattern which is likely the source of his right arm pain and weakness and numbness that involves the third through fifth digits." Record at 825. Dr. Buxton noted that he had "ordered updated cervical spine x-rays and MRI to reassess the status of the C7-T1 segment" and that, with the benefit of the MRI study, the plaintiff would follow up with Rajiv D. Desai, M.D., "to determine whether further surgical intervention [wa]s required for this issue." *Id*.

4

As the commissioner points out, *see* Opposition at 2-4, this court held an ALJ's failure to consider evidence postdating a claimant's date last insured harmless in *Stain v. Astrue*, No. 2:11-CV-225-DBH, 2012 WL 1067867 (D. Me. Mar. 28, 2012) (rec. dec., *aff'd* Apr. 17, 2012), and noted in *Pierce v. Astrue*, No. 1:10-cv-242-JAW, 2011 WL 2678919 (D. Me. July 7, 2011) (rec. dec., *aff'd* July 29, 2011), that a medical opinion phrased in the present tense is not indicative of a claimant's condition prior to his or her date last insured, *see Stain*, 2012 WL 1067867, at *5; *Pierce*, 2011 WL 2678919, at *5.

That is so here. While Dr. Buxton obtained the plaintiff's medical history, he evaluated his condition as of the date of the examination, June 14, 2016. *See* Record at 824-29. And, although he noted that the plaintiff's symptoms suggested that he had begun to develop a right C8 radicular pattern and that further surgery might be necessary, he stated that any decision regarding surgery would be made only after fresh diagnostic studies were reviewed by Dr. Desai. *See id*. at 825 (noting that "[n]o recent cervical spine imaging has been obtained").

Thus, although the ALJ erred both in declining to admit evidence he had already admitted and in stating that there were no medical records from 2016, nothing in the Buxton record could have made a material difference in his assessment that the plaintiff's spine condition was stable and improved as of his date last insured, December 31, 2015. The error, accordingly, is harmless.

## B. The ALJ's Evaluation of the Plaintiff's Subjective Complaints

The plaintiff next argues that the ALJ erred in evaluating his testimony regarding his subjective complaints, in violation of Social Security Ruling 16-3p ("SSR 16-3p"). *See* Statement of Errors at 9-13.[3]

---

[3] The commissioner has clarified that SSR 16-3p, which supersedes Social Security Ruling 96-7p ("SSR 96-7p"), applies to decisions issued on or after March 28, 2016. *See* Social Security Ruling 16-3p Titles II And XVI: Evaluation

5

The ALJ found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Record at 19. The plaintiff construes this conclusion to have been based on the following 10 findings:

> [The ALJ's] finding that "[c]uriously, the hospital records for the [plaintiff']s ice shoot [sic] accident are not contained in the medical evidence"; (2) evidence of past alcohol abuse in the record; (3) evidence of a past incarceration for drug trafficking; (4) evidence of use of non-prescribed medications and diversion of prescribed medications; (5) evidence of "normal" or "mild" examination findings and lack of treatment for knee pain or left shoulder pain "during the relevant time"; (6) the psychological consultative examination report of Donna Gates, Ph.D.; (7) a finding that "[i]t is unclear where the [plaintiff's] diagnosis of anxiety came from" (followed immediately by a finding that anxiety was diagnosed by [the plaintiff's] primary care provider Dr. John Dickens); (8) a finding that "[t]here is no evidence the [plaintiff] was treated for back pain as he has had no physical therapy, acupuncture, or steroid injections related to his back"; (9) findings that [the plaintiff] was able to perform activities of daily living and spend the winter of 2014 in Florida; and (10) a finding that "there are no medical records from 2015 or 2016, suggesting that the [plaintiff]'s condition is stable and improved."

Statement of Errors at 10-11 (citing, and quoting, Record at 17-20). He complains, as a general matter, that the ALJ failed to explain which of his symptoms he found "consistent or inconsistent with the evidence" in the record and how his evaluation of the plaintiff's symptoms led to that conclusion. *Id*. at 11 (quoting SSR 16-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 672). He then takes issue with each of the 10 findings on which he construes the ALJ's partial rejection of his claimed symptoms to have been based. *See id*. at 11-13.

However, as the commissioner contends, the ALJ's analysis survives scrutiny. *See* Opposition at 4-9.

---

Of Symptoms In Disability Claims, 82 Fed. Reg. 49462, 49462-63 (Oct. 25, 2017). The instant decision was issued on December 23, 2016. *See* Record at 23.
.

6

First, the ALJ provided an adequate explanation of his assessment of the plaintiff's claimed symptoms pursuant to SSR 16-3p, articulating reasons why he deemed particular categories of alleged symptoms (knee pain, left shoulder pain, neck pain, depression, anxiety, back pain, and muscle spasms in the plaintiff's hands) inconsistent in some respects with the evidence of record. *See* Record at 18-19.

Second, as the plaintiff's counsel acknowledged at oral argument, SSR 16-3p does not displace the overarching principle that an ALJ's credibility determination is entitled to deference, except insofar as such a determination is based on a claimant's overall character or truthfulness, which the ruling clarifies is not a proper basis for discounting alleged symptoms. *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); SSR 16-3p at 665 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.").

The discussion at issue here survives the applicable deferential standard of review.

Four of the challenged findings (regarding the absence of records pertaining to the plaintiff's ice chute accident and evidence of his alcohol use, imprisonment, and misuse of medications) appear either entirely or partly in a portion of the decision summarizing the record evidence, which precedes the ALJ's analysis of particular alleged symptoms. *See* Record at 17-18. That summary cannot reasonably be read to contain reasons for the ALJ's assessment of the

7

plaintiff's statements concerning his symptoms and limitations. In any event, even if the ALJ had erroneously considered evidence bearing on the plaintiff's character or truthfulness, any error is harmless because he identified several valid reasons for his assessment, as discussed below. *See, e.g., Little v. Colvin*, No. 2:13-cv-365-GZS, 2014 WL 5782457, at *8 (D. Me. Nov. 6, 2014) (ALJ's credibility determination survived deferential standard of review when claimant did not challenge all of the bases for it, and those he did challenge survived scrutiny).

*Back pain*. The ALJ found that, while the plaintiff had a lumbar spine x-ray in October 2014 that showed degenerative disc disease of his lumbar spine, there was "no compression fracture[,]" his spine had "normal alignment[,]" and there was "no evidence the [plaintiff] was treated for back pain as he has had no physical therapy, acupuncture or steroid injections related to his back." Record at 19; *see also id*. at 732. The plaintiff challenges the latter finding on the basis that the ALJ erroneously ignored Dr. Buxton's June 2016 treatment note, which in his view showed that his back pain could not effectively be addressed until after he had surgery to address his neck pain. *See* Statement of Errors at 12-13. At oral argument, his counsel contended that the ALJ had thereby failed to "consider[] possible reasons" why the plaintiff had not sought "treatment consistent with the degree of his . . . complaints." SSR 16-3p at 673. Yet, even assuming that the 2016 Buxton note can be read to suggest that the plaintiff could not effectively address his back pain before addressing his neck pain, nothing in that note indicates that this was the case on or before December 31, 2015. The error, accordingly, is harmless.

*Muscle spasms in hands*. The ALJ found that when the plaintiff complained of muscle spasms "he was under the influence of alcohol or in benzodiazepine withdrawal, so it is difficult to know if this symptom would be present in the absence of substance abuse." Record at 19 (citation omitted); *see also id*. at 706-07. Later, in discussing the plaintiff's pain complaints in

general, the ALJ further observed that he took "a benzodiazepine for muscle spasms and/or anxiety." *Id*. at 19. In response to the plaintiff's argument that this constituted an impermissible consideration of substance abuse as character evidence, *see* Statement of Errors at 11-12, the commissioner countered that the ALJ referenced substance abuse not to cast aspersions on the plaintiff's character but, rather, to suggest that substance use might be the cause of the hand spasms, *see* Opposition at 6. The commissioner added that, in any event, the ALJ had found that medication (benzodiazepine) helped control the plaintiff's hand spasms. *See id*.

At oral argument, the plaintiff's counsel rejoined that the ALJ's finding regarding the possible impact of substance abuse was unsupported by substantial evidence because the cited treatment record contains no indication that the spasms were caused by substance abuse. For example, he noted that the treatment record, which was dated September 29, 2014, indicated that the plaintiff had not used alcohol since 2012. *See id*. at 707. Nonetheless, the error does not demonstrate that the ALJ impermissibly considered purported substance abuse as character evidence. Rather, he endeavored to draw a nexus between the plaintiff's interactions with substances and their possible attendant physical results. *See id*. at 19. While he erred in finding that substance abuse could have been responsible for the spasms, he supportably linked them to benzodiazepine withdrawal. *See id*. at 19, 706-07.

*Neck pain and diminished lifting ability*. The ALJ deemed the plaintiff's testimony that he could lift only five pounds inconsistent with "his activities of daily living" and "his improved medical condition and lack of treatment following his surgery" – a reference to "multilevel fusions during the relevant time" for neck pain. *Id*. at 19. The plaintiff contends that the ALJ's findings regarding his activities primarily derived from a misrepresentation of Dr. Gates' report, which actually reflected his frustration over his inability to engage in activities he had previously

9

performed, such as fishing, cutting and splitting firewood, yard work, and maintenance of his property. *See* Statement of Errors at 13. Yet, the relevant portion of the Gates report, phrased in the present tense, reasonably can be read to reflect his functional ability as of that time: "He said that when he is not fishing he is splitting wood and has done a lot of work on land." Record at 676.

At oral argument, the plaintiff's counsel contended that the sentence could not reasonably be so read in the larger context of the report, which indicated that the plaintiff "[c]urrently" felt frustrated and discouraged that he could not work and stated that he could not do anything or take care of his house. *Id*. at 676. The context cuts both ways, however. Dr. Gates also stated that, when she asked the plaintiff what he did on a typical day, he "said that he enjoys working with wood and . . . that his land is his real hobby[,]" and "[h]e cuts firewood and splits it by hand." *Id*. at 677. Beyond this, as the commissioner points out, *see* Opposition at 7, there is other evidence of record that the plaintiff engaged in activities inconsistent with his alleged five-pound lifting limitation during the relevant period, *see, e.g.*, Record at 648 (June 22, 2012, description by Dr. Desai of plaintiff as "a very active gentleman"), 669 (July 10, 2013, notation by Paul Gosselin, D.O., that plaintiff's pain had subsided to the point that he could engage in yard work).[4] The ALJ's finding regarding the plaintiff's activities, accordingly, is supported by substantial evidence.

*Anxiety*. The ALJ gave "great weight" to the opinion of Dr. Gates, Record at 20, noting that she had "opined [that the plaintiff] had no clinically significant mental health limitations," "could manage a mild level of stress and function independently on simple tasks and could behave

---

[4] At oral argument, the plaintiff's counsel contended that the ALJ transgressed SSR 16-3p in relying on the plaintiff's activities without considering that "inconsistencies in an individual's statements made at varying times do[] not necessarily mean they are inaccurate[,]" given that "[s]ymptoms may vary in their intensity, persistence, and functional effects[.]" SSR 16-3p at 672. The plaintiff identifies no contradictory evidence, however, other than that contained in the Gates report, *see* Statement of Errors at 13, which the ALJ considered.

in an emotionally stable manner[,]" and had an adjustment reaction with depressed mood, antisocial personality disorder, and a Global Assessment of Functioning ("GAF") score of 70, "suggesting only mild limits[,]" *id*. at 18 (citation omitted). He further noted that, in September 2014, the plaintiff "told his provider [Donna Sonner, APRN] he had an optimistic mood and denied anxiety." *Id*. (citation omitted); *see also id*. at 725. The ALJ stated that it was "unclear where the diagnosis of anxiety came from[,]" however, "Dr. Dickens, the [plaintiff]'s treatment provider, prescribed diazepam and diagnosed anxiety." *Id*. at 18. He added that it was "not clear if the diazepam was prescribed for anxiety or muscle spasms." *Id*.

The plaintiff complains that the ALJ failed to make any findings regarding how Dr. Gates' report was inconsistent with a diagnosis of anxiety, other than its absence from her list of diagnoses, and improperly relied on a progress note reflecting a denial of anxiety, when "inconsistencies in an individual's statements made at varying times do[] not necessarily mean they are inaccurate[,]" given that "[s]ymptoms may vary in their intensity, persistence, and functional effects[.]" Statement of Errors at 12 (quoting SSR 16-3p at 672). He adds that the ALJ contradictorily found that the origin of his anxiety diagnosis was unclear and that Dr. Dickens had diagnosed anxiety. *See id*.

As the commissioner points out, *see* Opposition at 7-8, the ALJ relied not only on Dr. Gates' lack of an anxiety diagnosis but also on her finding that the plaintiff had no clinically significant mental health limitations, *see* Record at 18. Dr. Gates had noted, in relevant part, that the plaintiff "reported no current issues with anxiety or panic" and that, on mental status examination, "[t]here were no anxiety features evident." *Id*. at 676-77. The plaintiff identifies

11

nothing about Dr. Dickens' diagnosis of anxiety or any other evidence of record that suggests that he had a severe impairment of anxiety. *See* Statement of Errors at 12-13.[5]

In sum, the ALJ's assessment of the plaintiff's subjective symptoms comported with the requirements of SSR 16-3p. Remand, accordingly, is unwarranted on the basis of this point of error.

### C. The ALJ's RFC Determination

The plaintiff next argues that the ALJ committed reversible error in crafting a physical and mental RFC formulation based on his lay interpretation of "the raw medical evidence and other evidence of record" that was less favorable to the plaintiff than any expert opinion of record would otherwise support. Statement of Errors at 13; *see also, e.g.*, *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record.").

As the plaintiff acknowledges, *see* Statement of Errors at 13-14, "despite the well-known precept that an [ALJ] may not interpret raw medical evidence on her own, . . . the burden remains with the claimant to show that such an error is not harmless[,]" *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *4 (D. Me. Jan. 5, 2015). Here, he falls short of meeting that burden.

#### 1. The ALJ's Physical RFC Assessment

The ALJ deemed the plaintiff physically capable of medium work with no more than occasional stooping, kneeling, crouching, crawling, balancing, or climbing ramps or stairs and a preclusion from exposure to all hazards such as unprotected heights. *See* Finding 5, Record at 16.

---

[5] The commissioner omitted to address the plaintiff's criticisms of the ALJ's evaluation of his knee and left-shoulder pain. *See* Statement of Errors at 12; Opposition at 4-9. However, even assuming error, the ALJ's assessment of the plaintiff's subjective symptoms survives scrutiny under the applicable deferential standard of review.

12

In so doing, he explained that he gave only some weight to the opinions of agency examining consultant Edward J. Harshman, M.D. and agency nonexamining consultant Donald Trumbull, M.D., which predated the relevant time period, and some weight to the opinion of agency nonexamining consultant Richard T. Chamberlin, M.D., who "fail[ed] to consider the pain relief offered by the [plaintiff]'s narcotic pain medication" or his "activities of daily living, which [we]re greater than what he has stated throughout the medical record." *Id*. at 20-21. He gave no weight to opinions found at Exhibits 11F and 12F of the record in part on the basis that they were unsigned and undated. *See id*.

The plaintiff asserts that the ALJ's physical RFC determination was less favorable to him than the evidence otherwise warranted because Drs. Trumbull and Chamberlin limited him to a reduced range of light work and Dr. Harshman limited him to work at no more than the sedentary exertional level. *See* Statement of Errors at 14. He adds that the ALJ erroneously rejected the opinion contained at Exhibit 11F, which was that of treating nurse practitioner Sonner, on the basis that it was unsigned and undated. *See id*.; Record at 742-43.[6] He argues that, to the extent that the ALJ deviated from all expert opinions of record, he crafted an RFC that was based on his own lay interpretation of the raw medical evidence and, therefore, unsupported by substantial evidence. *See* Statement of Errors at 14.

As the commissioner rejoins, *see* Opposition at 10-11, however, the error is harmless. The plaintiff highlights only one difference between the Trumbull/Chamberlin opinions and the ALJ's RFC determination: that Drs. Trumbull and Chamberlin limited him to light work, while the ALJ found him capable of performing medium work. *See* Statement of Errors at 14. The three representative jobs on which the ALJ relied at Step 5 to find the plaintiff capable of performing

---

[6] The plaintiff does not challenge the ALJ's rejection of the opinion contained at Exhibit 12F, which is indeed unsigned and undated. *See* Statement of Errors at 14; Record at 744.

13

work existing in significant numbers in the national economy all were light jobs, however. *See* Record at 22, 621. The plaintiff does not contend that the Trumbull and Chamberlin opinions cannot stand as substantial evidence of his physical RFC. *See* Statement of Errors at 14.

In similar circumstances, in which an ALJ (i) gave the opinion of an agency nonexamining consultant who found a claimant capable of performing light work only some weight, (ii) erroneously construed raw medical evidence to find the claimant capable of medium work, and (iii) relied at Step 5 on the claimant's ability to perform a representative light job, this court held the error harmless when the claimant had not timely argued that the agency nonexamining consultant's opinion could not stand as substantial evidence of his physical RFC. *See Hewes v. Astrue*, No. 1:10-cv-513-JAW, 2011 WL 4501050, at *5-6 & n.7 (D. Me. Sept. 27, 2011) (rec. dec., *aff'd* Oct. 17, 2011). I reach the same result here.

At oral argument, the plaintiff's counsel sought to distinguish *Hewes* on the basis that, there, the record was devoid of any expert opinion that the claimant was limited to *less than* a light exertional capacity. *See Hewes*, 2011 WL 4501050, at *5-6. He noted that in this case, by contrast, both Dr. Harshman and treating nurse practitioner Sonner found that the plaintiff had a sedentary or less than sedentary exertional capacity. *See* Record at 742-43, 745-46. Yet, the plaintiff does not challenge the ALJ's rationale for discounting the Harshman opinion, *see* Statement of Errors at 14; Record at 20, and his challenge to the rejection of the Sonner opinion falls flat. The plaintiff contends that the ALJ gave no weight to the Sonner opinion "based upon factually erroneous findings that her opinion was unsigned and undated." Statement of Errors at 14. However, the ALJ rejected that opinion on the additional bases that it was devoid of either "an explanation for the restrictions" or a "foundation[.]" Record at 20.

Because Sonner, a nurse practitioner, is not a so-called "acceptable medical source," 20 C.F.R. § 404.1513(a) (2016) (nurse practitioners not listed among those deemed acceptable medical sources), the ALJ was not obliged to accord her opinion controlling weight or to provide "good reasons" for his disposition of it, Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017) ("SSR 06-03p"), at 327 ("[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.") (citations omitted); *Guest v. Berryhill*, No. 2:16-cv-00228-JHR, 2017 WL 2414468, at *7 (D. Me. June 2, 2017) ("An [ALJ] need not provide 'good reasons' for discounting the opinion of a 'non-acceptable' treating source, as he or she must if addressing the opinion of an 'acceptable' treating source.") (citation omitted).

A lack of explanation or foundation for an opinion constitutes a good reason to reject even the opinion of an acceptable medical source. *See, e.g.*, 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Therefore, the ALJ did not err in rejecting the Sonner opinion in part on those bases.

The plaintiff having failed to show that the ALJ erred in his weighing of the two opinions more favorable to him than those of Drs. Trumbull and Chamberlin, there is no material distinction between this case and *Hewes*.

## 2. The ALJ's Mental RFC Assessment

The plaintiff next challenges the ALJ's omission of any limitations on his ability to get along with the public, which he contends was unsupported by any expert opinion, including that of Dr. Gates. *See* Statement of Errors at 14.

15

As noted above, the ALJ explained that he gave the Gates opinion great weight. *See* Record at 20. He gave the opinion of agency nonexamining consultant Lewis F. Lester, Ph.D., only some weight, *see id*. at 21, explicitly rejecting his conclusion that the plaintiff "cannot interact with the public due to his personality disorder and depression," *id*. at 418. The ALJ explained:

> [T]here is little evidence that the [plaintiff] is unable to get along with the public. He has worked in the past with others without apparent difficulty. He spent seven years in prison without apparent difficulty. Moreover, he is able to get along with his numerous care providers without difficulty.

*Id*. at 21.

I find no error. As the plaintiff points out, *see* Statement of Errors at 14, Dr. Gates diagnosed him with an antisocial personality disorder, *see* Record at 678, and noted that "it appeared that his willingness to follow work rules will be compromised by disregard for social norms[,]" *id.* at 677-78. Nevertheless, she concluded that the plaintiff "presented with no clinically significant mental health limitations[,]" *id.* at 677, and she did not indicate that he had any limitations in his ability to interact with the public, coworkers, or supervisors, *see id*. at 677-78. The ALJ, thus, reasonably concluded that Dr. Gates' opinion stood for the proposition that the plaintiff had no limitation on his ability to interact with the public, despite her diagnosis of antisocial personality disorder.[7]

### D. The Appeals Council's Decision on Newly Submitted Evidence

The plaintiff finally argues that the Appeals Council erred in concluding that he had not shown a reasonable probability that evidence submitted to that body would change the outcome of

---

[7] At oral argument, the plaintiff's counsel contended that Dr. Lester's finding of a restriction against working with the public bolstered his client's argument that the ALJ had misconstrued the Gates opinion, because Dr. Lester had assessed that restriction with the benefit of review of the Gates report. *See* Record at 414. Nonetheless, the ALJ accurately summarized Dr. Gates' findings regarding the impact of the plaintiff's mental impairments on his ability to function at work, reasonably concluding that nothing therein suggested an inability to work with the public. *Compare id*. at 18 *with id*. at 678.

16

the ALJ's decision. *See* Statement of Errors at 15; Record at 2. As the commissioner observes, *see* Opposition at 13, a claimant making such an argument must demonstrate that the Appeals Council was "egregiously mistaken[,]" *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). The plaintiff falls short of doing so.

The plaintiff contends that the newly submitted evidence was material to the ALJ's findings that:

> (1) a lack of medical records from 2015 or 2016 suggested that [the plaintiff's] condition was stable and improved; (2) evidence regarding [the plaintiff's] work related injury in 2011 and subsequent treatment records was not present in the record; and (3) [the plaintiff] no longer met the criteria of Listing 1.04 after his June 2012 surgery, although he appeared to meet those criteria from August of 2011 through June of 2012.

Statement of Errors at 15 (citing Record at 16-20).

He notes that the newly submitted evidence "included pre-surgical consultation and imaging records from 2016, extensive treatment records from 2011 through 2013 related to [the plaintiff's] work-related injury, and evidence that [the plaintiff's] cervical degenerative disc disease continued to meet the criteria of Listing 1.04 in 2016." *Id.* (citing Record at 40-52, 61).

As the commissioner observes, this "amounts to little more than a suggestion that the evidence was material," devoid of specification of "how [the evidence] contravenes the Appeals Council's finding that it did not demonstrate a reasonable probability of changing the ALJ's decision." Opposition at 13. That is insufficient to meet the rigorous standard articulated by the First Circuit.

In any event, as the commissioner points out, *see* Opposition at 13-14, a significant portion of the records presented to the Appeals Council is cumulative or duplicative of records before the ALJ. *Compare, e.g.,* Record at 38-39 *with id.* at 642-43 (records noting that the plaintiff was doing well following 2012 cervical fusion); *id.* at 40-45 *with id.* at 824-29 (identical June 14, 2016,

17

Buxton note); *id.* at 64 *with id.* at 650 (identical report of June 18, 2012, cervical spine radiograph); *id.* at 66 *with id.* at 651 (identical consultative report dated June 18, 2012); *id.* at 70-71 *with id.* at 646-47 (identical notes of Dr. Desai dated October 24, 2012, and July 30, 2012), and many of the non-duplicative records postdate the plaintiff's date last insured, *see, e.g., id*. at 40-51, 61.

The plaintiff, accordingly, fails to demonstrate his entitlement to remand on the basis that the Appeals Council was egregiously mistaken in concluding that his newly proffered evidence would not have changed the outcome of the ALJ's decision.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 18th day of May, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge